UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CHERRY GROWERS, INC.,

           Debtor.

_____/

Case No. 17-04127-swd
Hon. Scott W. Dales
Chapter 11

## SUPPLEMENTAL OPINION REGARDING CASH COLLATERAL MOTION

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

### I.      INTRODUCTION

Cherry Growers, Inc., as chapter 11 debtor in possession (the "DIP"), seeks an order granting Debtor's Motion for Order Authorizing Debtor's Use of Cash Collateral and for Adequate Protection with Huntington National Bank (the "Motion," ECF 24). The DIP's principal secured creditor, the Huntington National Bank (the "Bank"), supports the Motion on the terms reflected in its stipulation with the DIP.[1] Farm Fresh First, LLC ("Farm Fresh"), opposes the Motion because, in the company's view, it violates the rights of Farm Fresh, and others, as beneficiaries of a statutory trust arising under the Perishable Agricultural Commodities Act of 1930 or "PACA," 7 U.S.C. § 499a *et seq*.

The court held an interim hearing on the Motion in Grand Rapids, Michigan, on September 8, 2017, at which it took testimony, granted interim relief, and scheduled a final hearing, all as contemplated in Fed. R. Bankr. P. 4001(b)(2). The court commenced the final hearing on September 25, 2017, also in Grand Rapids, but adjourned it, with the agreement of counsel, to

---

[1] The United States Trustee initially opposed the Motion, but it resolved its objection in advance of the adjourned final hearing.

October 30, 2017, in Traverse City, Michigan, to coincide with the meeting of creditors under 11 U.S.C. § 341. The DIP, Farm Fresh, Cherry Central Cooperative, Inc., CherrCo, Inc., Huntington National Bank, Materne North America Corp., Leobardo Ocanas Farms, Hollenbeck Orchards, the Official Committee of Unsecured Creditors (the "Committee"), and the United States Trustee all appeared through counsel in Traverse City.

During the hearing, after addressing three separate housekeeping motions, the court heard argument regarding the DIP's proposed use of cash collateral. At the conclusion of the hearing, the court announced its decision to grant the Motion. This opinion supplements the rationale placed on the record.

## II.    JURISDICTION

The court has jurisdiction over the DIP's chapter 11 case under 28 U.S.C. § 1334(a) because the United States District Court has referred all bankruptcy cases, and related proceedings, to the bankruptcy court as provided in 28 U.S.C. § 157(a) and W.D. Mich. LCivR 83.2(a). Hearings regarding the authority of an estate fiduciary to use cash collateral and other property are "core proceedings" as a statutory matter, under 28 U.S.C. § 157(b)(2)(M). The court, therefore, has authority to resolve the Motion.

## III.    ANALYSIS

### a.    The PACA Trust

By creating a statutory trust, Congress has protected growers of perishable agricultural products, as well as their agents and others involved in supplying such products to the marketplace, against the risk of non-payment by buyers and others in this part of our food chain. Employing traditional trust principles, the producer and others closer to the crop-side of the transaction may enjoy the benefits of being the trust's beneficiaries, while the produce buyers and others involved

in processing and marketing must shoulder the burdens of the fiduciary duties associated with a so-called "PACA trust." The statute that creates the PACA trust provides as follows:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. . . . The provisions of this subsection shall not apply to transactions between a cooperative association, as defined in section 1141j(a) of title 12, and its members.

7 U.S.C. § 499e(c)(2). As authorized under PACA, the Secretary of the United States Department of Agriculture has promulgated regulations implementing the statutory scheme, including those specifically regarding the PACA trust. *See* 7 C.F.R. § 46.46. Courts have relied on these regulations while construing and enforcing PACA. *See, e.g., Tom Lange Co., Inc. v. Kornblum & Co., Inc. (In re Kornblum & Co., Inc.)*, 81 F.3d 280, 286 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enter., Inc.* 986 F.2d 1010 (6th Cir. 1993). Under these cases, a PACA claimant, as a seller of eligible produce, has a trust claim against the qualifying inventory and proceeds that trumps the claims and even the liens of the buyer's creditors -- secured, unsecured, priority, it matters not.

The applicable regulation provides that the PACA trust "is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom." 7 C.F.R. § 46.46(b). The Secretary's regulations explain that "[t]rust assets are to be preserved as a nonsegregated 'floating' trust," and that "[c]ommingling of trust assets is contemplated." *Id.*

Farm Fresh urges the court not to authorize the DIP to use property included in the PACA trust -- *i.e.*, property in which Farm Fresh and other supposed PACA claimants have the superior equitable interest as beneficiaries under the statutory trust -- to fund this chapter 11 case. The PACA claimant argues that the *res* of a PACA trust is not even included within the property of the bankruptcy estate, citing several appellate cases. Its point is well-taken as far as it goes, although it is more precise to say the equitable interest of the PACA trust beneficiary in the trust *res* is not included in the bankruptcy estate, but the DIP's legal interest is. *See* 11 U.S.C. § 541(d); *see also* discussion, *infra*, at pp. 7-8. Certainly, any property interests determined to be included in the PACA trust are not available to pay the claims of non-PACA creditors, as the court itself advised the parties even before the interim hearing on the Motion almost two months ago. *See* Letter from the court to counsel dated September 6, 2017 (ECF No. 27).

This bedrock PACA principle is simply stated, but it is extraordinarily difficult to apply, particularly given the broad definition of the term "proceeds" that prevails in our Circuit and District, and the resulting expansion of the term "property" thereby included in the PACA trust *res. See Sanzone-Palmisano,* 986 F.2d at 1013; *J.A. Besteman Co. v. Carter's Inc.*, 439 F.Supp.2d. 774, 778 (W.D. Mich. 2006); *see also Kornblum,* 81 F.3d at 284 n.2. Indeed, although the Debtor's president testified at the interim hearing that since 2014 it has derived its income from non-PACA sources (such as renting its facilities, supplying utilities, labor, and expertise in processing raw produce owned by others), it is conceivable that the DIP may have made payments on debts secured by its equipment and even its real estate since the time the PACA trust first arose, thereby bolstering the argument that the PACA trust attaches to all property which the DIP regards as included within its bankruptcy estate. And, because commingling is "contemplated" and segregation is not required, and because many years have elapsed since the alleged PACA trust

arose, tracing presents a difficult evidentiary burden for whomever must shoulder it.  The court now turns to this difficult question.

b.      The Burden of Proof and Tracing PACA Trust Property

Outside of bankruptcy, presumably given PACA's remedial purpose and traditional trust principles which impose on the fiduciary the obligation to account for trust property, courts have placed the burden of proof in PACA disputes squarely on the alleged fiduciary, in this case the DIP.  *See Sanzone-Palmisano Co.* 986 F.2d at 1014; *J.A. Besteman*, 439 F.Supp.2d at 778.

As the Sixth Circuit observed in *Sanzone-Palmisano*, cases in which the PACA trustee deals only in perishable agricultural commodities are relatively easy to resolve:  "[t]he produce supplier need only file a timely complaint and prove the amount of unpaid produce," and upon such proof the supplier "is entitled to a portion of the produce buyer's inventory and produce-related assets equal to what the supplier is owed."  *Sanzone-Palmisano*, 986 F.2d at 1014.  However, when the PACA trustee is in the business of selling other commodities in addition to perishable produce, and commingles the proceeds from all business activities, "the case is more complicated and the ramifications are greater."  *Id.*  Presumably commingling of receipts from sale of services or rental income, as in the DIP's case, similarly complicates the proofs.  Nevertheless, the PACA trustee "has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets," even though "in most cases it will be virtually impossible for a PACA [trustee] to trace the origin of the disputed assets."  *Id.* (*citing In re Gotham Provision Company, Inc.*, 669 F.2d 1000, 1011 (5th Cir.) (discussing the impossibility of tracing assets under similar trust provisions of the Packers and Stockyards Act), *cert. denied*, 459 U.S. 858 (1982)).  Closer to home, Judges Bell and Scoville opined in *J.A. Besteman*, that PACA trust protection can spread to all sorts of non-perishable assets (including real and personal property

that the PACA debtor owned before the sales at issue) on the theory that PACA proceeds might have been used to pay down debt. Seizing on these cases, Farm Fresh asks the court to require the DIP to prove that it will not be using PACA trust property either to fund its operations or to provide the Bank's adequate protection if the court grants the Motion.

In a two-party dispute aimed at declaring the competing claims of parties to a particular fund or other property -- a proceeding that in bankruptcy would fall under Part VII of the Federal Rules of Bankruptcy Procedure as opposed to today's contested matter -- the court would not hesitate to place the burden of proof on the DIP as alleged fiduciary to prove a negative, namely that it is not using trust property. After all, this result, while "harsh," is what Congress had in mind, according to the Sixth Circuit. *Sanzone-Palmisano*, 986 F.2d at 1014.

The cash collateral hearing, however, is a contested matter under 11 U.S.C. § 363 to determine whether the court should authorize the DIP to use estate property, including cash collateral and other property (as adequate protection for the interests of others). Emphatically, a cash collateral hearing is not a proceeding to resolve, as a final matter, competing property interests. *Cf.* Fed. R. Bankr. P. 7001(2).

So, notwithstanding the burden of proof that might apply when declaring property interests as between Farm Fresh and the DIP under PACA, after the order for relief and filing of the Motion, another federal statute comes into play -- the Bankruptcy Code -- and it expresses a slightly different Congressional intent to assign the burdens of proof. More specifically with respect to a cash collateral or adequate protection hearing such as this under § 363, Congress addresses who bears the various burdens of proof:

> In any hearing under this section –
>
> (1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

11 U.S.C. § 363(p).  The court, therefore, must harmonize the burden of proof in a two-party dispute under PACA with the burdens in a contested cash collateral proceeding, a collective proceeding involving the rights of the DIP, secured creditors, and unsecured creditors alike.

With the benefit of counsel's argument, the court concluded during a recess at the hearing that if Farm Fresh established the amount of its claim, and that it preserved its rights as a beneficiary of the PACA trust under 7 U.S.C. § 499e, it will have met its burden under § 363(p) on the issue of its interest in the disputed property.  For purposes of the Motion, the DIP conceded that Farm Fresh has met its burden of proof.  The same statute, however, also requires the DIP to establish adequate protection of the interests of other entities in the property it proposes to use.

c.      The Parties' Positions

All parties that appeared at the final hearing in Traverse City, save for Farm Fresh, had agreed to a form of order to finalize the court's interim decision to permit the DIP to use the funds in the concentration account at the Bank, with the protections for PACA claims in a portion of the DIPs unencumbered motor vehicle fleet (limited to the $41,097.05 in the concentration account the court previously determined could be included within the PACA trust), and to permit the DIP to use funds it generates from its co-manufacturing and rental business going forward.  Although Farm Fresh sought limited clarification of the court's earlier decision (rendered at the interim hearing) to authorize the DIP to use the funds in the concentration account, at the final hearing it elected not to contest the DIP's authority to use those funds.

Instead, Farm Fresh sought to persuade the court that its PACA claim reached all of the DIP's property under the rationale in *J.A. Besteman,* at least if the DIP could not prove otherwise.

In fact, Farm Fresh argued that, in the absence of proof to the contrary from the DIP, all income derived during the case from any of the property in the DIP's possession -- property that the DIP has been using for years -- would constitute proceeds of the voracious PACA trust, and that the DIP may not use any of the property because (as trust property) it belongs to Farm Fresh, not the bankruptcy estate.

As noted above, Farm Fresh's counsel cited ample authority for the proposition that PACA trust property is excluded from the estate. *See, e.g., Matter of Delta Produce, LP*, 845 F.3d 609, 613-14 (5th Cir. 2016) (PACA proceeds "are not even part of the bankruptcy estate"); *Nickey Gregory Co., L.L.C. v AgriCap, L.L.C.*, 597 F3d 591, 595 (4th Cir. 2010) (same); *Tom Lange Co., Inc. v. Kornblum & Co., Inc. (In re Kornblum & Co., Inc.*), 81 F.3d 280 (2d Cir. 1996) (same); *Bowling & Son, Inc. v. San Joaquin Food Service, Inc. (In re San Joaquin Food Service, Inc.)*, 958 F.2d 938, 939 (9th Cir. 1992) (same). Nevertheless, to contend, as Farm Fresh does, that the subject matter of the PACA trust is excluded from the bankruptcy estate overstates the cases Farm Fresh cites. Those statements within the cases, carefully read, are either more nuanced than they appear at first blush, or constitute *dicta* on this crucial point.[2]

Even outside of bankruptcy, a grower who sells produce to a supermarket, and who preserves its rights as trust beneficiary, does not by that status alone have the authority to prevent the supermarket from using the produce included within the PACA trust, or the proceeds

---

[2] The court in *San Joaquin Food Service,* for example, affirmed the lower courts' conclusion that the PACA claimant had not preserved the PACA trust, so there was no occasion to hold that PACA trust property was excluded from the bankruptcy estate: there was no trust property. The statements in the *Nickey Gregory* case are also *dicta* on this point, as that opinion involved a two-party dispute in the United States District Court, not a bankruptcy proceeding in which the scope of the bankruptcy estate was an issue before the court. The *Delta Produce* court tolerated the administration of PACA trust property through the bankruptcy court's appointment of a special counsel under § 327, albeit outside the Bankruptcy Code's priority or distribution scheme. Citing § 541(d), the *Delta Produce* court stated that the trust assets were "insulated" from the bankruptcy estate. The *Kornblum* case similarly cited § 541(d) when it declared that PACA trust property was excluded from the bankruptcy estate. But § 541 emphatically does not say that the subject matter of the PACA trust is excluded from the bankruptcy estate, only that a claimant's equitable interest in the subject matter of the PACA trust is excluded, a bankruptcy precept that the *Kornblum* court expressly recognized by citing § 541(d). *Kornblum*, 81 F.3d at 284.

therefrom, or even its equipment, as Farm Fresh appears to be arguing in this case. Rather, PACA and the associated regulations expressly contemplate commingling of trust and non-trust property, the creation of a "floating trust," as well as continued operations of the PACA trustee. All of these things together are designed to promote priority payment to the PACA claimant. Within bankruptcy, at least in chapter 11, the trustee or the debtor in possession presumptively continues operating its business in accordance with applicable non-bankruptcy law. *See* 11 U.S.C. §§ 1107 and 1108; *cf.* 28 U.S.C. § 959(b). A PACA claimant cannot hold the trustee or debtor in possession hostage in bankruptcy any more than it can outside bankruptcy, at least not without an injunction or order under § 363(e) to that effect. *See J.A. Besteman,* 439 F.Supp. 2d at 778-79 (enjoining PACA trustee). Instead, the law expects the PACA trustee (whether bankruptcy trustee, debtor in possession, or non-debtor) to conform its conduct to that of a fiduciary -- and to do so for the benefit of *all* beneficiaries of the PACA trust, not just the first one to reach the courthouse.

So to say that the subject matter of a PACA trust is outside the bankruptcy estate in a way that cripples a reorganization overstates the PACA effect, largely by understating (i) the broad scope of the bankruptcy estate under § 541(a), and (ii) the authority of a trustee or debtor in possession to use estate property with court supervision under § 363. Though the case law defines PACA proceeds broadly, the Bankruptcy Code defines property of the bankruptcy estate even more broadly. Judge Shefferly, writing in a different context, observed that "[e]ven a bare possessory interest such as a tenancy at sufferance, is 'an interest in real property within the scope of the estate in bankruptcy under section 541.'" *In re Plastech Engineered Prod., Inc.*, 382 B.R.

90, 106 (Bankr. E.D. Mich. 2008) (citations omitted).  Here, the DIP's estate has at least that much

of an interest in plant, property, and equipment, and likely a whole lot more.[3]

And, more specifically with respect to property that a debtor holds in trust, § 541 provides

as follows:

> Property in which the debtor holds, as of the commencement of the case, only
> legal title and not an equitable interest . . . becomes property of the estate under
> subsection (a)(1) or (2) of this section only *to the extent* of the debtor's legal title
> to such property, but not *to the extent* of any equitable interest in such property
> that the debtor does not hold.

11 U.S.C. § 541(d).  Most of the cases which Farm Fresh cites for the proposition that PACA trust

*res* is excluded from the bankruptcy estate cite § 541(d), the text of which speaks in terms of the

"extent" of interests.  Here, the extent of Farm Fresh's equitable interest in the bankruptcy estate

is capped at $337,159.18.  The DIP's property, at least as scheduled, likely exceeds $9,000,000.00

in value.[4]  So, even conceding that the PACA trust is a "floating trust" that touches all of the

property the DIP regards as bankruptcy estate property, Farm Fresh has no *legal* interest in the

property enumerated on the DIP's schedules, and no right, absent proving a case for injunctive

relief or the necessity of providing adequate protection under § 363(e), to prevent the DIP from

using the property of the estate, encumbered or not.  Without some stronger showing beyond Farm

Fresh's mere status as a PACA beneficiary, the court will not permit the tail to wag the dog.

Nor does the court accept Farm Fresh's argument that the concepts of "cash collateral" and

"adequate protection" cannot apply to proceeds included in the PACA trust because, in the view

---

[3] Bankruptcy courts authorize the use of cash collateral, or decree adequate protection, in contested matters under Fed. R. Bankr. P. 9014; they declare property rights in adversary proceedings under Fed. R. Bankr. P. 7001(2).  The true and final extent of competing interests is yet to be determined.

[4] Because a PACA claim trumps an ordinary lien, the court may safely disregard the ordinary liens on the estate property when calculating the value potentially available to satisfy Farm Fresh's claim.  For this reason, after the court explained its ruling on the record, Farm Fresh did not put the DIP to its proofs on adequate protection under § 363(p), apparently conceding that, under the court's rubric, there is ample value to satisfy its claim.

of Farm Fresh, the PACA trust is "excluded from the bankruptcy estate."  Again, what is excluded

from the estate is the PACA claimant's equitable *interest* in the thing that is included in the

bankruptcy estate.   Borrowing a distinction from the following passage included in the

Restatement (Third) of Trusts may shed some light on this point.  The "cash" and other "cash

equivalents" are the "subject matter" of the bankruptcy estate -- the "things" in the trust, as opposed

to the competing "interests" in these things -- interests that the Restatement refers to as "property."

The Restatement puts it this way:

> c. Property. The term "property" usually denotes *interests in things
> and not necessarily the things themselves*.   See original
> Restatement of Property, Introductory Note to Chapter 1.  The
> expression "trust property" denotes the property interests that are
> held in trust.  The phrase "subject matter of the trust" denotes *the
> things themselves, some or all interests in which are held in trust*.

Restatement (Third) of Trusts, § 2, comment c (emphasis added).[5]   This trust law distinction

between the "interests in things" and the "things themselves" is the same distinction that the

Bankruptcy Code draws in its definition of "cash collateral":   "cash collateral means cash,

negotiable instruments . . .  deposit accounts, or other cash equivalents . . . in which the estate and

an entity other than the estate have an *interest . . .*"  11 U.S.C. § 363(a)(emphasis added).  This

text recognizes the unremarkable proposition that the bankruptcy estate and Farm Fresh can have

concurrent "interests" in cash equivalents, even if (as a matter of PACA law), all the cash (up to

$337,159.18) will eventually make its way into Farm Fresh's hands, depending, of course, on the

proofs.  In other words, even if the "floating" equitable interests of Farm Fresh as PACA claimant

are excluded from the bankruptcy estate under § 541(d), Farm Fresh and the DIP may each have

an "interest" in the same thing at the same time, and the DIP can use the "thing" (the cash collateral

or other property impressed with a PACA trust, for example), as long as it provides adequate

---

[5] Traditional trust principles apply to a PACA trust.  *Kornblum,* 81 F.3d at 284.

protection of the other entity's "interest" in that "thing."   Bankruptcy courts apply this unremarkable principle all day long with respect to liens on estate property.

So viewed, it makes sense to think in terms of permitting the DIP to use its buildings and equipment to conduct its business as it has done for years, as well as cash and cash equivalents derived from that use, even though these "things" may be impressed to some extent with a statutory trust, as long as the DIP provides adequate protection of Farm Fresh's interests in the estate property.

And, because the value of the "property of the estate" that Farm Fresh believes is impressed with the PACA trust far exceeds Farm Fresh's PACA claim as filed,[6] the court concludes that the DIP has met its burden of showing that Farm Fresh will be adequately protected notwithstanding the proposed use of the property of the estate, including the DIP's equipment, facilities, and the funds derived from operations as described during the hearing.   Therefore, as announced on the record in Traverse City on October 30, 2017, the court will grant the Motion, and will consider the order that the DIP's counsel circulated in advance of the hearing, as modified by the court's conclusions regarding adequate protection.

IV.     CONCLUSION AND ORDER

During the hearing, the court and the parties extensively discussed the supposed differences between PACA claims and secured claims, for example, given the language of § 541(d) excluding from the estate a PACA claimant's equitable interest.  On a closer reading of the Bankruptcy Code however, the differences between PACA claims and secured claims vanish as a practical matter.

For example, the Bankruptcy Code's definition of "lien" embraces both a secured creditor's and a PACA claimant's interest in particular items in the nature of property -- "a charge against or

---

[6] Fed. R. Bankr. P. 3001(f) (presuming validity and amount of proof of claim).

interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). In chapter 7 cases, and in chapter 11 cases through the "best interest of creditors" test or absolute priority rule under § 1129(a) or otherwise, holders of PACA claims and secured claims receive preferred treatment outside the Bankruptcy Code's usual distribution scheme. *See* 11 U.S.C. §§ 725 and 726. And, as noted above with respect to the definition and use of "cash collateral," the text of Bankruptcy Code is broad enough to accommodate and adequately protect the interests of PACA claim holders within the collective proceeding under title 11, notwithstanding their preferred status as beneficiaries of a statutory trust prescribed under applicable non-bankruptcy law.

In sum, the court's decision to authorize the DIP to use its plant, property, and equipment, and the funds generated through operations, simply seeks to preserve the efficacy and utility of this collective proceeding in a manner consistent with Congressional intent expressed in PACA and the Bankruptcy Code for all stakeholders.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Eric MacLeod, Perry G. Pastula, Esq., Scott B. Kitei, Esq., Daniel F. Gosch, Esq., Brendan G. Best, Esq., Jonathan R. Moothart, Esq., Andrew C. Shier, Esq., Robert F. Wardrop, II, Esq., Paul I. Bare, Esq., David A. Becker, Esq., E. Todd Sable, Esq., Michelle M. Wilson, Esq., attorney for the United States Trustee, and all entities requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 1, 2017**



Scott W. Dales
United States Bankruptcy Judge