UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CHERRY GROWERS, INC.,

                Debtor.

_____/

Case No. DG 17-04127
Hon. Scott W. Dales
Chapter 11

## MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

### I. INTRODUCTION

*Pro se* creditor Debra L. Ganzak filed a motion for allowance of an administrative expense claim in the amount of $24,239.99 allegedly arising from the post-petition termination of her employment as controller for chapter 11 debtor Cherry Growers, Inc. (the "Debtor"). The Debtor opposes the administrative expense claim, as does Gene R. Kohut, the liquidating trustee under the Debtor's confirmed chapter 11 plan.[1]

After conducting a telephonic status conference on November 6, 2018, the court issued a Scheduling Order (ECF No. 567) memorializing the parties' cost-conscious agreement to waive an evidentiary hearing and permit the court to resolve their dispute based on briefs, affidavits, and other matters of record, drawing reasonable inferences from the parties' submissions.[2]

---

[1] In this opinion, the court will refer to Ms. Ganzak's request for an administrative expense claim (ECF No. 542) as the "Motion;" to the Debtor's response (ECF No. 555) as the "Response;" to the Debtor's First Amended Chapter 11 Plan of Liquidation (ECF No. 368) as the "Plan;" and to the Findings of Fact and Conclusions of Law and Order On Confirmation of Debtor's First Amended Chapter 11 Plan of Liquidation (ECF No. 531) as the "Confirmation Order." For convenience, unless otherwise specifically noted, references within the text of this opinion to statutory sections, as in "§ 503," shall denote a section within the Bankruptcy Code, title 11 of the United States Code.

[2] *See* Fed. R. Bankr. P. 9017 and Fed. R. Civ. P. 43(c) ("When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."). By agreement of the parties, the court is not constrained by the rules governing inferences in connection with motions for summary judgment under Fed. R. Civ. P. 56.

After carefully considering the parties' arguments, affidavits, and other documents submitted in connection with the Motion, the court will deny the Motion in part, grant it in part, and allow a Class 1 administrative expense claim under the Plan, but only in the amount of $1,073.48.

## II.  JURISDICTION

The court has jurisdiction to resolve this dispute because the Debtor's case, originally within the purview of the United States District Court under 28 U.S.C. § 1334, has been referred to the United States Bankruptcy Court under 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). The process of allowing or disallowing claims against the estate is a statutory "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Notwithstanding the confirmation of the Debtor's Plan, the court specifically preserved its authority to resolve claim objections pursuant to Art. XVI, § 1 of the Plan, and the sixth decretal paragraph of the Confirmation Order.   No party to this controversy has challenged the court's authority to enter a final order regarding the Motion, and the court finds that it has such authority.

## III.  ANALYSIS

Ms. Ganzak's proposed administrative claim consists of twelve weeks of salary ($10,963.20), vacation pay ($3,180.47), sick pay ($1,096.32), and benefit continuation for six months ($9,000.00).  *See* Memorandum Re: Motion of Debra L. Ganzak for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1) (ECF No. 576, "Ganzak Memorandum") at Exhibit N.  In support of priority treatment, she argues that her employment continued post-petition, and that her former employer (the Debtor) offered similar treatment to other office management personnel, classified as full-time exempt administrative employees, who were either laid off or otherwise lost their jobs involuntarily.  She contends that the Debtor set a

precedent by providing benefits to others, and she asks the court to apply the supposed precedent

to her by awarding a Class 1 administrative priority claim in the amount of $24,239.99.

The Debtor, in contrast, opposes any such administrative priority treatment, arguing that

(1) Ms. Ganzak's claim arose (if at all) under a prepetition executory contract that the Debtor

rejected (by not assuming it) upon confirmation of its Plan; (2) the Debtor's ad hoc or "case-by-

case" severance payments to some *management* employees does not undermine the employee

handbook governing non-management employees such as Ms. Ganzak; and (3) that the Debtor did

not enter into any post-petition agreement with Ms. Ganzak, thereby precluding any administrative

expense claim under *In re White Motor Corp.*, 831 F.2d 106 (6th Cir. 1987).  *See* Debtor's Brief

in Support of Response to Motion of Debra L. Ganzak for Allowance of Administrative Expense

Claim Pursuant to 11 U.S.C. 503(b)(1) (ECF No. 579, the "Debtor's Brief").

In our Circuit, to merit administrative priority treatment, a claimant like Ms. Ganzak must

meet the following test:

> The test for whether a claim qualifies for payment as an administrative expense is set forth in *In re Mammoth Mart, Inc.* 536 F.2d 950 (1st Cir. 1976).  In *Mammoth Mart* the court stated that a claimant must prove that the debt (1) arose from a transaction with the debtor-in-possession as opposed to the preceeding [sic] entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate.  *Id.* at 954.
>
> A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance is then rendered to the estate.  If the inducement came from a pre-petition debtor, then consideration was given to that entity rather than to the debtor-in-possession.  *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984).  However, if the inducement came from the debtor-in-possession, then the claims of the creditor are given priority.  *Id.* at 586.

*Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987) (setting forth the test); *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir. 2009) (party seeking the priority "has the burden of proving that his claim constitutes an administrative expense").   Courts closely scrutinize administrative expense claims "because priority claims reduce the funds available for creditors and other claimants." *In re Federated Dept. Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001); *see also Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir.1997).

The parties agree on most of the material facts underlying their dispute, though they draw different conclusions or inferences from the facts.  Ms. Ganzak served as the Debtor's controller before the Debtor filed its chapter 11 bankruptcy petition on August 31, 2017, and continued her employment for several months thereafter, until January 19, 2018, when the Debtor ceased operations.  Declaration of Eric MacLeod dated December 3, 2018 (ECF No. 580, "MacLeod Decl.") at ¶¶ 4 and 7; Declaration of Geraldene Schichtel dated December 3, 2018 (ECF No. 51, the "Schichtel Decl.") at ¶¶ 4 and 7.  Her employment with the Debtor initially began in January 2015 when she was hired as an assistant controller.  At the time of her employment termination (post-petition) on January 19, 2018, when the Debtor ceased operations, she was serving as controller, with significant administrative, but no management or supervisory, responsibilities. MacLeod Decl. at ¶ 4; Schichtel Decl. at ¶ 3.  She was an at-will employee, which meant that she could be terminated at any time, "for any reason with or without cause." *See* Employee Handbook for Administrative Personnel (attached to the MacLeod Decl. and Schichtel Decl. as Exhibit 1, the "Employee Handbook") at p. 2 and 7; *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 116, 507 N.W.2d 591, 597 (1993) ("Employment contracts for an indefinite duration are presumptively

terminable at the will of either party for any reason or for no reason at all."); *Landin v. Healthsource Saginaw, Inc.*, 305 Mich. App. 519, 854 N.W.2d 152 (2014) (same).

Although the Employee Handbook is not itself an employment contract,[3] the terms of her employment were subject to the Employee Handbook, which nowhere provides for or even mentions a severance package, continued wages, or insurance coverage.  Mr. MacLeod and Ms. Schichtel both swear that the terms of Ms. Ganzak's employment included a termination payout only for unused, accrued vacation hours.  *See* MacLeod Decl. at ¶ 8; Schichtel Decl. at ¶ 8.  Indeed, the only termination-related benefit expressed in any of the documents submitted in connection with the Motion was the right to receive accrued but unpaid vacation time, and then only when the employee resigned, gave notice, and continued working during the notice period.  *See* Employee Handbook at pp. 7 (unused vacation time will be paid out if employee resigns and gives notice) and 19 ("Unused vacation time will be paid upon termination of employment . . .").  It is fair to say that the while the Employee Handbook provides support for paying Ms. Ganzak accrued, unused vacation,[4] it provides no support for the other constituents of her proposed administrative claim.  She does not argue otherwise.

Instead, Ms. Ganzak relies on an implied policy she gleans from supposed "precedent" arising from payments the Debtor allegedly made to other employees, including Eric MacLeod, Geraldine Schichtel, Jonathan Sluis, Thomas Spencer, Vicki Olsen, and Irene Dunham-Thayer. To bolster her inference (and the inference she asks the court to draw), she submits documentation of supposed severance payments the Debtor made prepetition and post-petition.

---

[3] Employee Handbook at p. 2 (Employee Handbook is a "<u>guideline</u>" and "is not intended as, and should not be read to be a contract of, employment").

[4] In a letter attached as Exhibit O to the Ganzak Memorandum, the Debtor agreed that Ms. Ganzak accrued paid vacation leave at the rate of 3 weeks per year, of 120 hours -- the formula prescribed in the Employee Handbook as applicable to a "full-time exempt administrative employee."  Ms. Ganzak's amended proof of claim (Proof of Claim No. 62-2) adopts this calculation.  *See infra* at p. __.

First, and most generally, given the case law cited above, the court will not quickly draw inferences in favor of finding an administrative claim, because recognizing such a priority works to the detriment of other claimants with lower priorities. *Federated Dept. Stores, Inc.*, 270 F.3d at 1000. The proof should be patent.

Second, with respect to the first two individuals -- Mr. MacLeod and Ms. Schichtel -- the collective $90,000.00 they received upon their separation was specifically negotiated in the plan confirmation process, divulged to creditors (and their committee) in a court-approved disclosure statement under § 1125(a), and expressly approved as retention payments upon entry of the Confirmation Order. Ms. Ganzak can point to no similarly express agreement,[5] other than the vague suggestion that as an office employee she would be "taken care of," as she stated during the telephone hearing on November 6, 2018. And, even assuming she could identify expressions of an offer and acceptance, the confirmation of the Plan without any provision for assuming the supposed contract would doom it to treatment as a prepetition claim -- in other words, not entitled to administrative treatment to the extent it qualified as a prepetition executory contract. 11 U.S.C. §§ 365(d)(2) (trustee may assume executory contracts before confirmation), (g)(1) (contracts not assumed under § 365 or in a plan are rejected), and 502(g)(1) (claim for rejection of executory contract treated as prepetition claim); Plan, Art. IX, p. 36 (specifying that the Confirmation Order constitutes order approving rejection of non-enumerated executory contracts).

Third, with respect to the other employees identified in the Ganzak Memorandum, Mr. MacLeod, in his sworn statement, explains that the Debtor did not have a severance payment policy, but made some severance payments to several employees on a "case-by-case basis,"

---

[5] The employment relationship in Michigan is a creature of contract, offer and acceptance. Ordinarily, "[t]he terms of an employment contract regarding compensation must be express promises, either oral or written . . ." *AFT Michigan v. State of Michigan*, 497 Mich. 197, 236, 866 N.W.2d 782, 804 (2015).

presumably with separately negotiated agreements. *See* MacLeod Decl. at ¶¶ 11-12. Indeed, the documentation that Ms. Ganzak cites to support her claim of an implied policy corroborates Mr. McLeod's "case-by-case" description of specifically negotiated agreements, for example by identifying "severance agreement" or "mutual agreement" on the pay advices upon which Ms. Ganzak relies. *See, e.g.*, Ganzak Memorandum at Exhibit C (regarding Jonathan Sluis), Exhibit E (regarding Thomas Spencer), Exhibit I (regarding Vicki Lynn Olsen), and Exhibit K (regarding Irene Dunham-Thayer). These documents are not evidence of a general, implied policy, but instead of specifically negotiated agreements. The Debtor's case-by-case approach to severance is consistent with Michigan law, which treats compensation-related terms of employment agreements generally as a matter of express, rather than implied, contract. *AFT Michigan*, 497 Mich. at 236, 866 N.W.2d at 804. As noted above, before the court would allow an administrative claim at the expense of other creditors, it would insist on a more robust evidentiary showing, certainly one less dependent on inference.

Here, Ms. Ganzak has been unable to establish any specific promise comprising the Debtor's offer to pay severance, continuing medical benefits, or unused sick pay, that she could accept through her continuing performance as an employee. Rather, the termination-related terms of employment are reflected in the Employee Handbook. Accordingly, the court finds that Ms. Ganzak has not established a right to any administrative claim for twelve weeks of salary, sick pay, and benefit continuation for six months.

The documents filed in connection with the Motion, however, do support a claim for unused vacation pay, albeit a modest amount accruing post-petition. Indeed, even the cases the Debtor cites in opposition to Ms. Ganzak's administrative claim recognize that a court should allocate employee benefits among the prepetition and post-petition period for employees whose

service spanned the petition date. *See Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d. 950, 955 (1st Cir. 1976) (stating that "priority [of employee severance claim] will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization" but disallowing administrative priority claim because "no part of their present claims arise from services performed for the debtor-in-possession") (cited approvingly in *White Motor Corp.*, 831 F.2d at 110); *see also Sunarhauserman*, 126 F.3d at 816 (affirming district court judgment that awarded administrative priority only to that portion of PBGC's claim that "related to benefits earned by employees during the post-petition period . . ."). Our Circuit's precedent requires an allocation in this context.

The allocation occurs by following the *White Motor* requirement that any administrative claim must be premised on a claimant's dealings with the representative of the bankruptcy estate -- a distinct juridical entity as some cases describe it. *See, e.g., Mammoth Mart*, 536 F.2d at 954. With respect to Ms. Ganzak's post-petition employment, she plainly meets this test. As an at-will employee (and as the Employee Handbook explains) she was "free to resign at any time." Employee Handbook at p. 7. Yet, it plainly appears, that she continued to come to work after the Debtor filed its bankruptcy petition, accepting the Debtor's terms of employment each day -- terms which induced her to continue working for a bankrupt enterprise. There can be no dispute that her employment benefited the estate, as the Debtor recognized by paying her throughout her employment, and as the statute itself expressly contemplates by including as administrative expenses the "wages, salaries, and commissions for services rendered after the commencement of the case . . ." 11 U.S.C. § 503(b)(1)(A)(i). It requires no stretch of the imagination to treat any post-petition entitlement to vacation pay, described in the Employee Handbook, as part and parcel of her post-petition wage, as the Bankruptcy Code expressly does in the section setting payment

priorities for prepetition claims in all chapters. *See* 11 U.S.C. § 507(a)(4)(A) (referring to "wages, salaries, commissions, including vacation, severance, and sick leave pay earned by an individual . . ."). Indeed, the Debtor itself treated Ms. Ganzak's vacation pay as wages, according to the correspondence to Ms. Ganzak from Mr. Pastula. *Compare* Ganzak Memorandum at Exhibit O (E-mailed Letter dated October 2, 2018 from Perry G. Pastula, Esq., to Ms. Debra Ganzak, inviting Ms. Ganzak to file an amended proof of claim asserting priority, evidently under § 507(a)(4)(A), in the amount of $2,740.80) *with* Proof of Claim No. 62-2 (asserting Ms. Ganzak's prepetition priority claim in the amount of $2,740.80 under § 507(a)(4)(A) for "wages, salaries, or commissions . . . earned within 180 days before the bankruptcy petition . . .").[6]

Based on the record, the court finds that Ms. Ganzak worked for the Debtor (and therefore the estate) for 141 days post-petition, which is approximately 39% of one year. If, as the parties agree, she accrues 120 hours of vacation pay each year as an exempt administrative employee with three years of service,[7] the court calculates that she accrued approximately 47 hours of unpaid vacation (.39 x 120 hours per year) during her post-petition employment. The parties evidently agree that each hour of unused vacation is worth $22.84, according to Mr. Pastula's October 2, 2018 letter and Ms. Ganzak's amended Proof of Claim No. 62-2. So, running the numbers, Ms. Ganzak has a Class 1 administrative expense claim under § 503(b)(1) in the amount of $1,073.48

---

[6] It appears that Mr. Pastula's letter and Ms. Ganzak's amended proof of claim may have overstated the extent to which she is entitled to priority under § 507(a)(4)(A) because both reflect a full year of accrued vacation pay (120 hours), rather than the vacation pay earned within 180 days *before* the commencement of this case (approximately 60 hours). Some of the confusion may derive from the definition of "Wage and Benefit Claims" included at Art. I, § 5 of Plan, which arguably lumps postpetition claims under § 503(b) with prepetition claims under § 507(a)(4) within the same definition. In any event, the parties evidently agree that the Debtor paid Class 2 "Wage and Benefit Claims" on or about November 5, 2018. *See* Ganzak Memorandum at p. 4 (noting payment of Class 2 claims on Nov. 5, 2018); MacLeod Decl. at ¶ 10. The court is not inclined to revisit the payment of any Class 2 claim *sua sponte,* especially given the authority that the Plan bestows on the Liquidating Trustee in this respect. *See* Plan, Art. IV, § P; Confirmation Order at p. 9, ¶ 7.

[7] *See* Employee Handbook at p. 19.

(47 hours @ $22.84 per hour) representing unused vacation pay allocable to her post-petition employment.

## IV.  CONCLUSION AND ORDER

Because Ms. Ganzak continued to serve the Debtor as its controller after the petition date (providing benefits at the behest of the Debtor), she is entitled to payment of unused vacation hours as part and parcel of her wages in accordance with the Employee Handbook which continued to govern her employment.  And, because the court is satisfied that this claim for unused vacation pay meets the *White Motor* test, her claim is entitled to priority under § 503(b)(1)(A)(i) as a Class 1 claim under the Plan.  Nevertheless, she has not established a right to benefits other than unused vacation pay, so the court will allow her administrative claim only in the amount of $1,073.48. The court leaves for another day any reconciliation between Ms. Ganzak's Class 1 and Class 2 claims.

Finally, the court applauds the parties' willingness to resolve this dispute in the cost-effective manner they have agreed to, saving each other (and the court) the expense and delay of a full-blown evidentiary hearing.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The Motion is GRANTED in part and DENIED in part;

2.      Ms. Ganzak shall have an allowed Class 1 administrative expense claim under § 503(b)(1)(A)(i) only in the amount of $1,073.48.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor, Perry

G. Pastula, Esq., Ms. Debra L. Ganzak (via First Class U.S. Mail), E. Todd Sable, Esq., Scott B.

Kitei, Esq., and the United States Trustee (via First Class U.S. Mail).

[END OF ORDER]

**IT IS SO ORDERED.**

**Dated December 21, 2018**



Scott W. Dales
United States Bankruptcy Judge